**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| NICOLE CLARKE-SMITH, | § | |
|      Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-cv-02732-M |
| | § | |
| BUSINESS PARTNERS IN | § | |
| HEALTHCARE, LLC, | § | |
|      Defendant/Counter-Plaintiff. | § | |

---

DEFENDANT/COUNTER PLAINTIFF'S RESPONSE TO
PLAINTIFF/COUNTER-DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

---

**DATED:  July 27, 2015**

Respectfully submitted,

/s/Elizabeth K. Stepp
**Elizabeth K. Stepp**
Texas State Bar No. 00788467
E-mail:  eks@federal-lawyer.com
**Lynette S. Byrd**
Texas State Bar No. 24047126
E-mail:  lsb@federal-lawyer.com
**THE   OBERHEIDEN   LAW   GROUP,
PLLC**
5710 LBJ Freeway, Suite 120
Dallas, Texas 75240
Telephone: (214) 334-7648
Fax: (972) 559-3365
**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2015, a true and correct copy of Defendant/Counter-Plaintiff's Response to Plaintiff/Counter-Defendant's Motion for Summary Judgment was served on Plaintiff/Couner-Defendant's counsel electronically.

/s/ Elizabeth K. Stepp
Elizabeth K. Stepp

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

III. ARGUMENTS AND AUTHORITIES ........................................................ 6

    A.   The Evidence Shows Clarke-Smith Violated the CFAA ......................................... 6

    B.   The Evidence Shows Clarke-Smith Breached Her Fiduciary Duties. .................. 10

    C.   The Evidence Shows Clarke-Smith Tortiously Interfered ..................................... 14

    D.   The Evidence Shows Clarke-Smith Committed Theft and Conversion. ............... 16

    E.   The Evidence Shows Clarke-Smith Stole Trade Secrets. ..................................... 18

    F.   The Evidence Shows Clarke-Smith Committed Fraud. ....................................... 20

    G.   The Evidence Shows Clarke-Smith Was Actionably Negligent. ......................... 23

IV.  CONCLUSION AND PRAYER ........................................................ 25

## TABLE OF AUTHORITIES

**CASES**

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503 (Tex. App. -- Houston [1st Dist.] 2003, no pet.)..................................................................................................... 10, 11, 24

*Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660 (E.D. Tex. 2002)................... 19

*Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001).............................................................. 20

*Bray v. Squires*, 702 S.W.2d 266 (Tex. App. --Houston [1st Dist.] 1985, no writ.)......... 10

*Culbertson v. Lykos*, ___ F.3d ____, No. 13-20569, 2015 U.S. App. LEXIS 10454, at *45 (5th Cir. June 22, 2015).......................................................................... 15, 16

*Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761 (N.D. Tex. 2012).................... 19

*Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348 (Tex. App. – Corpus Christi 2003), *rev'd in part on other* grounds, 207 S.W.3d 330 (Tex. 2006)................................. 15

*Fidelity Nat'l Title Ins. Co. v. Heart of Tex. Title Co.*, 2000 Tex. App. LEXIS 72 (Tex. App.--Austin Jan. 6, 2000, pet. denied) ..................................................... 21

*Formosa Plastics Corp. USA v. Presidio Eng's & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998)......................................................................................................... 20

*Herider Farms-El Paso, Inc. v. Criswell*, 519 S.W.2d 473 (Tex. Civ. App. -- El Paso 1975, writ ref'd n.r.e.)..................................................................................... 24

*Int'l Airport Centers v. Citrin,* 440  F.3d 418 (7th Cir. 2006)................................. 8

*Ipreo Holdings LLC v. Thomson Reuters  Corp.,* No. 09 CV 8099, 2011 U.S. Dist. LEXIS 25356, *7 (S.D.N.Y.  Mar.  7,  2011) ................................................. 9

*J.P. Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361 (S.D.N.Y. 2002)...... 22

*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193 (Tex. 2000) ............................... 10

*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193 (Tex. 2002) ............................... 24

*Mabrey v. SandStream, Inc.*, 124 S.W.3d 302 (Tex. App. -- Fort Worth 2003, no pet.).. 24

*Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D. 59 (D. Mass. 2011)....... 22

*Nexans Wires S.A. v. Sark-USA, Inc.,* 166 Fed. App'x 559, 562 (2d  Cir. Feb. 13, 2006 ....... 6

*Patterson Custom Homes, Inc. v. Bach,* 586 F. Supp. 2d 1026 (N.D. Ill. 2008).................. 8, 9

*Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts,* 300 S.W.3d 348 (Tex. App.--Dallas 2009, pet. denied) ............................................................................ 20, 21

*U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.,* No. 6:09-cv-1002-Orl-31TBS, 2012 U.S. Dist. LEXIS 114222 (M.D. Fla. Aug. 14, 2012).................................................. 22

*U.S. v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996) .......................................................... 22

*Univ. Sports Pub. Co. v. Playmakers Media Co.,* 725 F. Supp. 2d 378 (S.D.N.Y. 2010)....... 9

*University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518 (5th Cir. 1974) ........

……………………………………………………………………………………………..19, 20

*Van Horn v. Chambers*, 970 S.W.2d 542 (Tex. 1998).................................................... 23

*Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915 (Tex. App.--Dallas 2013, no pet.) .................................................................................................................... 23

**STATUTES**

18 U.S.C. § 1030(a)(2)(C) ............................................................................ 6

18 U.S.C. § 1030(a)(5)(C) ............................................................................ 6

18 U.S.C. § 1030(e)(11) ............................................................................. 9

18 U.S.C. § 1030(e)(2)(B) ........................................................................... 6

18 U.S.C. § 1030(e)(8) ............................................................................... 7

18 U.S.C. § 1030(g) .................................................................................... 6

**Tex. Civ. Prac. & Rem. Cod**e § 41.001(11) ................................................. 23

**OTHER AUTHORITIES**

James C. Winton, *Corporate Representative Depositions Revisited*, 65:3 **Baylor Law Rev.** 942 (2013)............................................................................................ 22

COMES NOW, Defendant/Counter-Plaintiff Business Partners in Healthcare, LLC ("Defendant" or "BPIH"), and files its Response in Opposition to Plaintiff/Counter-Defendant's Motion for Summary Judgment (the "Motion"), and would respectfully show as follows:

## I.   INTRODUCTION

Plaintiff/Counter-Defendant Nicole Clarke-Smith ("Plaintiff" or "Clarke-Smith")'s direction of BPIH's human resources department left the company in a state of disaster, suffering consequences that are still being felt, and paid for, today. A non-exhaustive list of her egregious behavior includes:

- Failing to send out COBRA notices, and lying to the Department of Labor both about sending out the notices and about having provided proof of such mailing to the DOL;

- Violating the requirement that 401k deposits be made in a timely manner, costing the company thousands of dollars in required reimbursements;

- Entering into an unauthorized, detrimental, multi-million dollar contract on behalf of BPIH;

- Failing to properly set up state tax withholding for clients in other states, leading to potential fines and sanctions against the company;

- Explicitly instructing unqualified applicants to lie on employment applications, knowing that doing so could cause BPIH's clients to lose their lab certifications;

- Not procuring disability and health insurance for employees that had paid for such coverage, leading to potentially millions of dollars in liability;

and

- Directly competing with her employer during her employment by acting as the President and CEO of a company providing the same services as BPIH.

Despite being presented with evidence of all of the above malfeasance, Clarke-Smith has now moved for summary judgment on all of BPIH's claims against her on the grounds that BPIH does not have any evidence of her bad acts. To the contrary, BPIH has more than sufficient evidence to prove each claim alleged. Because a reasonable jury could find for BPIH on each cause of action, Plaintiff's motion for summary judgment must be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Nicole-Clarke Smith was terminated when BPIH discovered that the Human Resources department (and, therefore, the company) was in crisis due to Plaintiff's complete failure to perform her job duties, causing multiple serious potential legal violations.  For example, on or about February 24, 2014, BPIH discovered that the Department of Labor ("DOL") had been seeking information from Plaintiff about her failure to send out COBRA notices. Declaration of Chris Harrington ("Harrington Dec.") at ¶ 5, App. 4.  Plaintiff's response was to ignore the requests.  *Id.*  Plaintiff failed to inform anyone at BPIH of the DOL's demands and threatened investigation.  According to the DOL, Plaintiff had been avoiding the DOL agent's phone calls and had repeatedly promised to send information that was never received by the DOL.  *Id.*  Plaintiff also lied to the DOL by claiming that the COBRA notices had been sent to the former employees when they had not.  *See* November 7, 2014 Declaration of Josh Daniel, submitted in

support of Defendant/Counter-Plaintiff's Response to Plaintiff/Counter-Defendant's Anti-SLAPP Motion to Dismiss (the "2014 Daniel Dec.") at ¶ 10, Exh. H, Appendix ("App.") 9-10, April 9, 2015 Deposition of Josh Daniel ("Daniel April Depo.") at 36:7-38:23, [1] App. 58-61.

Just as the DOL investigation was coming to light, BPIH learned from its 401k administrator that Clarke-Smith had not been depositing 401k withdrawals to employees' accounts in a timely manner. *See* Declaration of Bryan Jackson ("Jackson Dec.") at ¶ 5, App. 78; Daniel April Depo. 187:14-189:19, App. 71-73. Thus, BPIH faced liability from the DOL for failing to properly handle COBRA notices and payments as well as liability for failing to promptly deposit employees' 401k contributions. *See* 2014 Daniel Dec. at ¶¶ 10, 11, App. 9-10; Daniel April Depo. at 180:8-16, App. 70.

And after her termination, the company continued to find serious and inexplicable wrongdoing by Clarke-Smith. First, she took a company laptop and thumb drive with her when she left the office. Both of these items contained confidential information of the company, including employee records. Despite repeated demands, she has failed to return these items. Daniel 2014 Dec. at ¶ 8, App. 8-9.

Second, during a routine audit of the qualifications of the employees of certain laboratories that are clients of BPIH, BPIH discovered that a few employees did not have the qualifications required for their jobs. Two of these employees, James Wright and Andre Grant, listed the same address on their applications as Plaintiff's home address. June 25, 2015 Deposition of Josh Daniel ("Daniel June Depo.") at 27:1-9, App. 87 (Grant

---

[1] All deposition excerpts referenced herein are cited as page number: line numbers.

[2] Plaintiff is in the process of obtaining the depositions of Mr. Grant and Mr. Wright, but they were not available prior to the deadline for this response. Accordingly, Mr. Grant's statement is admissible at this stage as a statement against interest. *See* Fed. R. Evid.

had same address as Clarke-Smith and his emergency contact was Clarke-Smith's daughter).  One of these employees, Grant, stated when questioned that he "filled out the application the way he was told to," and when pressed further, admitted to two human resources employees that Clarke-Smith had told him to lie on his application in order to obtain the job.[2]  Harrington Dec. ¶ 6, App. 4; Jackson Dec. ¶ 6, App. 78; Daniel June Depo.at 25:2-21, App. 86 ("Q:  And what was his response?  A:  Nicole told me to."). The laboratories require certain educational qualifications in order to maintain their licensing status, and therefore this lie could result in a sanction to the client. Daniel June Depo. at 31:15-32:14, App 88-89.

Third, BPIH learned that Plaintiff had entered into a multi-million dollar contract with ADP to provide payroll services.   Plaintiff bound BPIH to this contract for several years without even discussing it with Mr. Daniel or anyone else at the company, let alone obtaining authorization to enter such a sizable contract on her own.  BPIH ultimately had to pay over $100,000.00 to extricate itself from the unwanted contract.  Daniel April Depo. at 95:18-96:18, App. 66-67.

Fourth, Plaintiff had failed to set up state income tax withholding properly in states other than Texas.  While ADP processed the paychecks, it was Clarke-Smith's responsibility to set up each employee properly in the system.  Her failure to do so meant that employees in multiple states were not having state taxes withheld, which led to additional costs for BPIH in fixing the setup and paying any penalties incurred for such failure. Daniel April Depo. at 230:2-25, App. 75 (collection action by Louisiana); Daniel

---

[2] Plaintiff is in the process of obtaining the depositions of Mr. Grant and Mr. Wright, but they were not available prior to the deadline for this response.  Accordingly, Mr. Grant's statement is admissible at this stage as a statement against interest.  *See* Fed. R. Evid. 804(a)(5)(B), 804(b)(3).

June Depo. at 78:12-82:3, App. 108-112.

Finally, BPIH discovered many incidents in which Clarke-Smith failed to obtain health, disability, and life insurance for employees (of BPIH and its clients) who signed up and paid for such coverage.   The premiums for this insurance were being taken out of their paychecks, but the insurance policies were never purchased.  Daniel April Depo. at 226:1-10, App. 74: Daniel June Depo. at 84:8-85:17, 88:7-20, App. 113-115.   In fact, BPIH is already facing claims from such employees, including one suffering from a terminal illness, which are currently in legal proceedings.  Daniel April. Depo. at 226:11-21, App. 74.

Of course, it is impossible for BPIH to know Clarke-Smith's true motivations, or to discern how she could have made so many errors when she claimed to be working 70 to 80 hours a week.  However, it appears that part of the explanation is that she was not just working for BPIH; she was also working for a company of which she is the CEO and/or President, and has been since 2010:  Total Reward Partners.   April 2, 2015 Deposition of Nicole Clarke-Smith ("Clarke-Smith Depo.") at 60:6-25, App.  150. Among other things, this company provides administrative, HR, and back-office support for its clients, including health care clients.  Clarke-Smith Depo. at 47:15-50:2, App. 143-146.[3]  Needless to say, she never told BPIH that she was running a competing business. Daniel April Depo. at 24:12-19, App. 56; Clarke-Smith Depo. at 63:18-64:2, App. 151-52.

As an employee, Clarke-Smith was disloyal, reckless, fraudulent, and stole from her employer.  BPIH is entitled to recompense for her misdeeds, and summary judgment

---

[3] During her deposition, Clarke-Smith claimed that she could not recall the names of any of these clients, but that she would provide them later.  She has failed to do so.

in favor of Plaintiff on BPIH's claims is not warranted.

### III.  ARGUMENTS AND AUTHORITIES

**A.  The Evidence Shows Clarke-Smith Violated the CFAA.**

The Computer Fraud and Abuse Act ("CFAA") provides in its pertinent part that "[w]hoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer . . . shall be punished." 18 U.S.C. § 1030(a)(2)(C). Under 18 U.S.C. § 1030(a)(5)(C), the CFAA subjects to criminal liability someone who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage." Although the CFAA is a criminal statute, it also provides a civil remedy.  Under the civil enforcement provision of the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g); see also *Nexans Wires S.A. v. Sark-USA, Inc.,* 166 Fed. App'x 559, 562 (2d Cir. Feb. 13, 2006 (recognizing that a plaintiff can bring a civil action if the plaintiff satisfies the factors set forth in 18 U.S.C. § 1030(c)(4)(A)(i)).

Specifically, Plaintiff is liable under the CFAA if she accessed any of Defendant's computers " without authorization or exceed[ed] authorized access, and thereby obtain[ed]... information from any protected computer," 18 U.S.C. § 1030(a)(2)(C), or " intentionally accesse[d] a protected computer without authorization, and as a result of such conduct, cause[d] damage and loss," 18 U.S.C. § 1030(a)(5)(C). Under the CFAA, a "protected computer" means a computer that is used in or affecting interstate or foreign commerce or communication...." 18 U.S.C. § 1030(e)(2)(B). Because Defendant's computing devices are used extensively to transmit, receive, and exchange data such as client,

personal, business and confidential information including information for personal use, clients, employees, consultants, and partners inside and outside the state of Texas, Defendant's computers are protected under the CFAA.  *See* Declaration of Christopher Torrez ("Torrez Dec.") at ¶ 2, App. 158.  Indeed, Plaintiff seems to concede that the laptop is a protected computer.[4]  *See* Brief in Support of Motion at 5.  However, she claims that there is no evidence that she has such a computer.  This argument is simply incorrect.

Plaintiff had two company laptops when she was employed at BPIH.  *See* Daniel June Depo. at 35:1-25, App. 90; Harrington Dec. at ¶ 2, App. 3; Jackson Dec. at ¶ 3, App. 77; Torrez Dec. at ¶ 3, App. 158.  After Plaintiff left, only one of these two computers was ever found.  Daniel April Depo. at 70:16-71:17, App. 64-65; Daniel June Depo. at 37:1-23; 41:3-6, App. 91-92; Harrington Dec. at ¶ 4, App. 3-4; Jackson Dec. at ¶ 4, App. 77-78; Torrez Dec. at ¶ 4, App. 158-59.  And although, upon request, Plaintiff returned a number of items she had taken with her from the office, this computer was never returned.  She did, however, return a laptop bag that she had filled with copies of papers she had taken with her when she left the office.   Declaration of Nick Oberheiden ("Oberheiden Dec.") at ¶ 2-3, App. 162; Torrez Dec. at ¶ 5, App. 159. The laptop that she did not return contained employee files and confidential materials of BPIH.  Daniel 2014 Dec. at ¶ 8, App. 8-9; Daniel June Depo. at 57:21-58:7; App. 95-96.  Thus, her continued access to this computer kept this information, which belonged to BPIH, from BPIH and thus caused damage and loss.  *See* 18 U.S.C. § 1030(e)(8) ("damage" is "any impairment to the integrity or availability of data, a program, a system, or information").

Plaintiff argues that BPIH cannot prove she "accessed" this laptop after she was fired.

---

[4] BPIH does not, however, allege that the stolen thumb drive is a computer within the meaning of the CFAA.

This argument fails for two reasons.  First, courts find an excess or lack of authorization under the CFAA, even if some access was granted, whenever the use and access was contrary to the interests of the authorizing party. *See, e.g., Patterson Custom Homes, Inc. v. Bach,* 586 F. Supp. 2d 1026, 1035 (N.D. Ill. 2008) (employee's access to the employer's protected computer in a manner that exceeded her authority and installation of data shredding software that caused permanent deletion of files on the computer were sufficient to state a cause of action under the CFAA); *see also Int'l Airport Centers v. Citrin,* 440 F.3d 418, 419-20 (7th Cir. 2006) (employee's installation of a ″secure-erasure″ program on his employer's computer was a violation of the CFAA).  In this case, the evidence is undisputed that Clarke-Smith was competing with BPIH through Total Rewards Partners.  Clarke-Smith Depo. at 47:19-53:6, App. 143-149. To the extent she used the files and forms on the laptop computer to support her competing business, that access was illegitimate and violated the CFAA.

Second, her continued possession of the laptop, in and of itself, is "access" to a protected computer under the CFAA.  The statute does not require any specific type, amount, or quality of use of a computer – merely that the person has unauthorized access.  A reasonable jury could find that Clarke-Smith wrongfully kept the laptop after being fired and infer that the only reason not to return the laptop would be to access the information it contained or to keep that information from BPIH.[5]

Finally, Clarke-Smith argues that BPIH cannot show it has suffered a loss of $5000 or

---

[5] It cannot and should not be the law that Plaintiff can steal a computer, deny possession of it, and then escape liability for doing so by arguing that no one can prove that she has turned on the computer since she stole it.  If the computer were available, Defendant could easily conduct a forensic examination of it to see what information it had contained and whether that information was misused.  The only reason for Plaintiff to refuse to return the computer is that she does not want this information discovered.

DEFENDANT'S RESPONSE TO MOTION FOR
SUMMARY JUDGMENT

more from her actions.  "Loss," under the CFAA, includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).  BPIH has incurred expenses in excess of $5,000.00 in a number of ways, including having to hire attorneys to address the stolen and wrongfully-used laptop and having its IT department investigate the missing computer.  *See* Oberheiden Dec. at ¶ 4, App. 163; Torrez Dec. at ¶ 4, App. 158-59; Daniel June Depo. at 61:24-62:14, App. 97-98 (legal fees incurred in prosecuting this case and in Department of Labor investigation).  These costs alone are enough to satisfy the damage threshold under the CFAA. *See, e.g., Patterson Custom Homes,* 586 F. Supp.2d at 1037 (the costs of responding to an offense under the CFAA constitute a "loss" under the statute).  Indeed, courts have found that losses include the costs of seeking to "identify evidence of the breach, assess any damage it may have caused, and determine whether any remedial measures were needed to rescue the network." *Univ. Sports Pub. Co. v. Playmakers Media Co.,* 725 F. Supp. 2d 378, 388 (S.D.N.Y. 2010); *see also Ipreo Holdings LLC v. Thomson Reuters Corp.,* No. 09 CV 8099, 2011 U.S. Dist. LEXIS 25356, *7 (S.D.N.Y. Mar. 7, 2011) (holding that a plaintiff can meet the loss requirement through "damage assessment and/or remedial measures, even without pleading actual damage").

The CFAA provides protection against wrongful access and damage to computers.  In this case, BPIH has presented sufficient evidence for a reasonable fact-finder to determine that Clarke-Smith wrongfully retained access to its computer, used the information stored therein, and caused it $5000 or more of damages.  Therefore,

DEFENDANT'S RESPONSE TO MOTION FOR
SUMMARY JUDGMENT

9

Plaintiff's motion for summary judgment on this cause of action should be denied.

### B.  The Evidence Shows Clarke-Smith Breached Her Fiduciary Duties.

A fiduciary relationship of agency exists between an employee and employer. *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App. -- Houston [1st Dist.] 2003, no pet.) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2000)).   When such a fiduciary relationship exists, the employee has a duty to act primarily for the benefit of the employer in matters connected with his or her agency.  *Id*. "The employee has a duty to deal openly with the employer and to fully disclose to the employer information about matters affecting the company's business." *Id*. (citing *Bray v. Squires*, 702 S.W.2d 266, 270 (Tex. App. --Houston [1st Dist.] 1985, no writ.)).   In fact, at her deposition, Clarke-Smith admitted that she had a fiduciary duty to BPIH, including a duty of loyalty and a duty of care:

> Q: Do you believe you had an obligation to be faithful to BPIH?
>
> A:  Yes.
>
> Q: Do you believe you had an obligation to not harm BPIH?
>
> A:  Absolutely.
>
> Q:  Do you believe that you had an obligation to not betray BPIH?
>
> A: Absolutely.
>
> Q:  Do you believe that you had a duty to be loyal to BPIH?
>
> A:  Yes.
>
> Q:  And act in the utmost good faith?
>
> A:  Yes.

Clarke-Smith Depo. at 24:5-18, App. 141.

It is undisputed that Plaintiff owed BPIH a duty to act primarily for its benefit.

*See Abetter Trucking Co*, 113 S.W.3d at 510.  Thus, Plaintiff breached her fiduciary duty by being the president of Total Rewards Partners, a company that competed with BPIH in providing administrative and human resources support to health care clients.  Clarke-Smith Depo. at 47:19-53:6, App. 143-149.  Plaintiff went so far as to create a DBA for Total Rewards, Managed Service Group, whose website advertises the provision of professional services to clients in the healthcare industry, while she was supposedly on medical leave from BPIH in February 2014.  Clarke-Smith Depo. 92:7-93:6, 108:11-24, App. 153-155.

Plaintiff further breached this duty when she acted for her own benefit rather than for the company's, including by taking the company computer and files for her personal benefit, by instructing her relatives to lie on job applications in order to get hired by BPIH's clients, and by entering into a contract with ADP without authorization.  *See* Daniel 2014 Dec. at ¶¶ 10, 14, 16, and Exhs. C, K, App. 9, 11, 25, 49.  In addition, her fiduciary relationship obligated Plaintiff to disclose to BPIH matters affecting its business.  *See Abetter*, 113 S.W.3d at 110.  Plaintiff's failure to disclose the DOL investigation to BPIH's CEO was thus a violation of her fiduciary duty.  *See* Daniel 2014 Dec. at ¶ 10, App. 9.

Moreover, Plaintiff breached her fiduciary duty to BPIH by affirmatively lying to her employer and to the federal government, claiming to have fixed problems with COBRA and 401k issues and asserting that she had done things that she had not (such as mailing information to the DOL and sending out COBRA notices).  Daniel 2014 Dec. at ¶¶ 5, 13 App. 8,10; Daniel June Depo. at 63:19-66:5,  71:5-75:10, App. 99-107; Daniel April Depo. at 103:1-104:3, App. 68-69.

The evidence about the DOL investigation and Clarke-Smith's role therein is

DEFENDANT'S RESPONSE TO MOTION FOR
SUMMARY JUDGMENT                                                                   11

overwhelming.  She did not send required COBRA notices to former employees, and then lied to the DOL on more than one occasion about providing documentation of those COBRA notices to the DOL.  As Josh Daniel explained in his depositions:

> Q: So as of March 12 [2014], did you know anything about the fact that Ms. Johnson claimed not to have gotten COBRA paperwork other than what Chris Harrington told you as you described a few minutes ago in your testimony?
>
> A:  By March 12?
>
> Q:  Yes.
>
> A:  Yes.
>
> Q:  What else did you know by March 12?  Anything else about that issue?
>
> A:  I had contacted Ms. Johnson.
>
> . . . .
>
> Q:  And what did you ask her?
>
> A:  I asked if she received her COBRA paperwork.
>
> Q:  What did she say?
>
> A:  No.
>
> . . . .
>
> Q:  Now, does – and the company contends that Ms. Clarke-Smith in fact didn't send over the requested documents to DOL?
>
> A:  Yes.
>
> Q:  And is the basis of that what the DOL said or was there any other information that led the company to conclude that?
>
> A:  We relied on the Department of Labor to be honest.
>
> . . . .
>
> Q:  What else – what other evidence did the company have that would reflect as to whether Ms. Clarke-Smith had or had not sent over

documents relating to Delicia Johnson to DOL?

A:  From Nicole's own statements to us.

Q:  And what were those statements?

A:   The locations of where we could find proof that Delicia Johnson's COBRA paperwork had been submitted.

. . . .

Q:  What did [the DOL] say about it?

A:  It was multiple conversations.  And in some conversations they had – and all of this was through my attorney, by the way.  I was not on the phone with the Department of Labor.  But it's my understanding that in multiple conversations at some point they conveyed that Nicole had said, Yes, I did go ahead and send it.  And then I don't know if it was prior to or subsequent to that, she had said, Well, we're going to reach out to ADP in order to get you the necessary proof that the COBRA paperwork was sent, which was what triggered us to the fact that there was a huge problem.

. . . .

Q:   Does the company know whether she either – that she did or didn't reach out to ADP before she made the statement?

A:  The company knows that she did not.

Q:  And how does the company know that?

A:  Because ADP is not our COBRA administrator.

Q:   Well, regardless, Ms. Clarke-Smith could have called them, even if it was not going to assist.  It's possible she could have done it, correct? Do you know one way or the other whether she did?

A:   Well calling ADP wouldn't be any different from calling a Subway Sandwich shop, they didn't administer our COBRA.

Daniel April Depo. 65:12-66:7, App. 62-63; Daniel June Depo. 132:9-133:5, 135:17-136:4, 139:20-140:7, App. 131-136.  Clarke-Smith herself admits that she does not know whether Ms. Johnson in fact received her COBRA paperwork.  Clarke-Smith Depo. at 252:18-23, App. 156.

Finally, contrary to Plaintiff's assertion, the evidence of damages is clear.  BPIH was damaged by having to pay back employees for COBRA coverage and 401k gains they would have had if not for Plaintiff's actions.  Daniel 2014 Dec. at ¶ 11, App. 10. BPIH was further damaged by having to hire attorneys to handle the DOL investigation. Daniel June Depo. 62:1-9, App. 98.

Plaintiff argues that "poor performance does not constitute a fiduciary duty breach."  Brief in Support of Motion at 7. This statement may be true.  However, Clarke-Smith's actions (and inactions) go well beyond "poor performance" and amounts to direct competition, lying, and concealing important matters affecting BPIH's business. Therefore, summary judgment is not appropriate on BPIH's claim of breach of fiduciary duty.

### C.  The Evidence Shows Clarke-Smith Tortiously Interfered.[6]

As Plaintiff admits, the evidence demonstrates that at least two clients canceled their contracts because of problems with the human resources department.  Brief in Support of Motion at 8.  However, Clarke-Smith claims that there is no evidence of willful and intentional interference, because as an agent, she can only have interfered with these contracts if she acted solely in her own personal interest.  Brief in Support of Motion at 9.  Once again, Clarke-Smith is ignoring the evidence that she was the President of a company that, by her own admission, competed with BPIH.[7]  Clarke-Smith

---

[6] As written, BPIH's counterclaim contains a claim for defamation and business disparagement.  However, this cause of action was dismissed under the Texas Citizen's Participation Act on Plaintiff's motion and is no longer at issue.

[7] BPIH has sought discovery about this company repeatedly, but, even after one hearing before Magistrate Judge Stickney, Clarke-Smith has still not produced the requested documents.  BPIH plans to return to Magistrate Judge Stickney for further orders in light of Plaintiff's failure to comply.

Depo. at 47:19-53:6, App. 143-149.  An intention to interfere with BPIH's contracts or potential contracts and then bid on the business from those clients for Total Rewards Partners can certainly be inferred by Clarke-Smith's strange actions in this case.  Intent in the context of tortious interference requires only that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it."  *Culbertson v. Lykos*, ___ F.3d ____, No. 13-20569, 2015 U.S. App. LEXIS 10454, at *45 (5th Cir. June 22, 2015).  Clarke-Smith surely knew that repeatedly sending incorrect payrolls and time sheets would be "substantially certain" to cause the cancellation of client contracts.  Moreover, an agent can be shown to act solely in her personal interest when she "acted in a fashion so contrary to the corporation's best interests that only the agent's personal interests could have motivated the actions."  *Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348, 366 (Tex. App. – Corpus Christi 2003), *rev'd in part on other* grounds, 207 S.W.3d 330 (Tex. 2006).  Because Clarke-Smith's actions were so contrary to BPIH's interests, she must have been acting in her own interest. Why else would the head of an HR department, who claims to have a Ph.D. in health administration, Clarke-Smith Depo. at 33:6-7, App. 142, repeatedly enter incorrect payroll information for a health care client?  *See* Daniel June Depo at 99:11-102:11; 104:9-106:25, App. 119-125.

With respect to the claim for tortious interference with prospective advantage, Plaintiff claims that BPIH has no more than "speculation" that client referrals would have led to additional contracts.  Clarke-Smith purposefully ignores the testimony of Josh Daniel, given as a corporate representative, that the company was in discussions with a group of OB/GYNs and in the process of obtaining those contracts prior to Clarke-

Smith's actions.  June Daniel Depo at 110:20-111:4, App. 126-27; *see also Culbertson*, 2015 U.S. App. LEXIS 10454 at *48 (tortious interference with prospective contract requires only "reasonable probability" of entering into contract).

Finally, Clarke-Smith again claims that there is no evidence of damages.  Of course, this claim is ridiculous.  The damages are the amounts lost by cancellation of the monthly fees accrued under the canceled contracts and the amounts BPIH would have received under the potential contract. *See* Daniel June Depo. 95:22-97:16, App. 116-18. Sufficient evidence exists on the tortious interference claims for them to go to trial.

### D.  The Evidence Shows Clarke-Smith Committed Theft and Conversion.

Clarke-Smith's argument for summary judgment on BPIH's theft and conversion claims stretches the boundaries of common sense.  First, Clarke-Smith claims that BPIH has no evidence that she stole a laptop and a thumb drive (and the associated information on those devices) because no one saw her leaving the building with the computer, and BPIH did not search exhaustively enough for the thumb drive.  The argument about the laptop is ridiculous; no one saw Clarke-Smith leave the office at all, so they could not have seen her leave with the laptop.  Daniel April Depo. 71:1-6, App. 99. The evidence that Clarke-Smith had two laptop computers is clear, as is the evidence that the second laptop was never recovered.  *See* Torrez Dec. ¶¶ 3-4, App. 158-59; Harrington Dec.¶ 3-4, App. 3-4; Jackson Dec. ¶ 3-4, App. 77-78.   As to the thumb drive, it was Clarke-Smith herself who stated that the "thumbnail" [sic] was either in the "top left-hand draw [sic]" of her desk or she had it in her possession.  *See* Daniel 2014 Dec. Exh. K, App. 49; Daniel June Depo. 49:10-17, App. 93 ("She said that the flash drive was either located in the – in her right-hand desk drawer or it might be on her.").  The HR department searched

in the desk drawers as well as in other places in her office they thought it might be, but could not find it.  *See* Harrington Dec.¶ 3-4, App. 3-4; Jackson Dec. ¶ 3-4, App. 77-78. The only logical conclusion is that Clarke-Smith herself has the thumb drive (a possibility she herself suggested), which supposedly contains evidence relevant to the DOL investigation into COBRA notices.

Second, Clarke-Smith claims that BPIH has no damages. BPIH has clearly been damaged by the loss of a thumb drive and a laptop computer:  the items themselves have value that is recoverable as damages.  *See* Torrez Dec. ¶ 6, App. 159.  Additionally, BPIH has been damaged by having the proprietary information on those devices, some of which does not exist elsewhere in the company, withheld from it.  Daniel June Depo. at 116:21-118:22, App. 128-30 (company has been damaged by theft because "there's proprietary information that is company property that is now in the possession of someone outside of the company").

Finally, Clarke-Smith claims that BPIH never requested that she return a laptop or a thumb drive.  This argument, too, is unavailing.  BPIH first requested Clarke-Smith come back to the office to exchange property in its termination letter, which she refused to do. Daniel 2014 Dec. Exh. J, K, App. 47-51.  Next, after a telephone discussion about BPIH's claims, Clarke-Smith's attorney sent BPIH a full laptop bag, which was turned over to the IT department.  However, when the bag was opened, it contained nothing but copies of the documents Clarke-Smith had taken upon leaving her office for the last time. *See* Oberheiden Dec. ¶¶ 2-3, App. 162, Torrez Dec. ¶ 5, App. 159.  Finally, considering that Clarke-Smith has repeatedly complained about BPIH's state court lawsuit against her and its counterclaims against her here, she can hardly claim now that she does not think

BPIH has expressed that it would like its laptop and thumb drive, and the information contained therein, returned.

### E. The Evidence Shows Clarke-Smith Stole Trade Secrets.

Plaintiff argues that BPIH cannot support its claim for theft of trade secrets because: 1) BPIH does not know what information is on the laptop computer or thumb drive; 2) Clarke-Smith did not improperly acquire the trade secrets, because she was entitled to them as an employee; 3) BPIH cannot show that Clarke-Smith used or disclosed its information; and 4) BPIH has no evidence of damages or actual or threatened misappropriation. Brief in Support of Motion at 13-14. To the contrary, BPIH has enough evidence on each element of this claim to survive summary judgment and proceed to trial.

First, Clarke-Smith herself stated that she kept information related to COBRA filings on the thumb drive, *see* 2014 Daniel Dec. Exh. K, App. 49, and BPIH's CEO testified that both the laptop and the thumb drive contained information that the company treated as trade secrets. Daniel June Depo. at 54:15-18 (employee records); 57:21-58:7 (payroll records, 1099 marketing information, notes about employees, statistical information, financial information), App. 94-96. While it is true that no one other than Clarke-Smith can say exactly what information is contained in the items she refuses to return or produce, the company's evidence about her use of those items, combined with her own statements, is sufficient to show that such information included trade secrets. *See* Jackson Dec. ¶¶ 2-3, App. 77; Harrington Dec. 2-3, App. 3.

Second, while Clarke-Smith had the authority to access these trade secrets while she was employed by BPIH, she had no authority to continue to access them after her

employment ended.  Clarke-Smith appears to argue that a former employee can never be guilty of misappropriation of trade secrets; such an argument is specious.  *See, e.g., Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 779 (N.D. Tex. 2012) ("It is well established, however, that even without an enforceable contractual restriction a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment.").

Third, the fact that Clarke-Smith is a competitor of BPIH through her company Total Rewards Partners could lead a reasonable juror to infer that she took the secrets and refuses to return them so that she can use them in her own business.  In any case, she is depriving BPIH of the use of those items, which is sufficient to find both misappropriation and damages.  *See University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) (noting that damages for theft of trade secrets may be measured in same way as patent damages, and that loss of value of information to plaintiff may be one such method of measurement).

Finally, BPIH's damages for theft of trade secrets could also be judged by a "reasonable royalty" standard.  *See University Computing,* 504 F.2d at 536 (recognizing that reasonable royalty standard can be applied even if defendants did not profit from stolen trade secrets, because "the lack of actual profits does not insulate the defendants from being obliged to pay for what they have wrongfully obtained in the mistaken belief their theft would benefit them"); *see also Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 665 (E.D. Tex. 2002) (noting that reasonable royalty approach is appropriate where "the trade secret has not been destroyed, where the plaintiff is unable

to prove specific injury, and where the defendant has not gained any profits by which to value the secrets").  The evidence demonstrates that BPIH charges its clients fees for providing human resources services, and a reasonable rate for such royalty could therefore be determined by reference to the amounts BPIH's clients pay.  *See* Daniel June Depo. 95:22-97:16, App. 116-18.  And although each client contract had different terms, *id.*, uncertainty of damages does not preclude recovery for theft of trade secrets; BPIH is entitled to have the fact-finder determine what a reasonable royalty would be. *University Computing*, 504 F.2d at 538-39 ("every case requires a flexible and imaginative approach to the problem of damages").

## F.  The Evidence Shows Clarke-Smith Committed Fraud.

To prove fraud, BPIH must establish that (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts*, 300 S.W.3d 348, 366 (Tex. App.--Dallas 2009, pet. denied) (citing *Formosa Plastics Corp. USA v. Presidio Eng's & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).  Fraud by nondisclosure is a subcategory of fraud, and silence is equivalent to a false representation "when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).

While traditional or actual fraud requires fraudulent intent, constructive fraud does not, and the actor's intent is irrelevant. *Tex. Integrated Conveyor*, 300 S.W.3d at

366.   "Constructive fraud encompasses those breaches that the law condemns as fraudulent merely because they tend to deceive others, violate confidences, or cause injury to public interests, the actor's mental state being immaterial.  Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship."  *Id*. (internal citations omitted).  A breach of fiduciary duty that causes injury to another is always fraudulent; whether that fraud is actual or constructive is determined by the actor's mental state or moral culpability.  *Fidelity Nat'l Title Ins. Co. v. Heart of Tex. Title Co.*, 2000 Tex. App. LEXIS 72, *9-10 (Tex. App.-- Austin Jan. 6, 2000, pet. denied).  As shown above, Clarke-Smith breached her fiduciary duties to BPIH; in so doing, she committed fraud.

Even if Clarke-Smith did not breach a fiduciary duty, she committed fraud by 1) stating that benefit issues had been resolved when they had not, and she knew that they had not; 2) failing to tell her employer that the DOL was investigating its COBRA mailings when she had a duty to speak; and 3) instructing potential employees to lie on their job applications, knowing that BPIH's clients were subject to state laws requiring certain educational levels for certain jobs.  Daniel 2014 Dec. at ¶ 5, App. 8; Harrington Dec. at ¶¶ 5-6; App. 4; Jackson Dec. at ¶ 6, App. 78-79.  BPIH relied on these statements by continuing to employ Clarke-Smith and not hiring someone else to run the HR department, and by recommending their clients hire the applicants without the proper education.  *See* Daniel April Depo. at 30:3-7, App. 57; Daniel 2014 Dec. ¶¶4-5, 14, App. 8, 11. BPIH was damaged because the cost of the DOL investigation and the 401k remuneration was increased each day that Clarke-Smith lied about the 401k issues and hid the DOL investigation, and because of the costs of re-training new employees after

firing those without the proper education.  *Id.*

In her motion for summary judgment, Clarke-Smith ignores the above evidence and relies solely on the testimony given at the deposition of Josh Daniel as BPIH's corporate representative regarding the basis for BPIH's fraud claim, ignoring the testimony he gave at his personal deposition or in previous declarations, the testimony of Clarke-Smith about her competing business, or the allegations made in BPIH's counterclaims.  Of course, a corporate representative is not required to state the law, marshal all the facts, or explain the company's legal strategy at his deposition.  *See* James C. Winton, *Corporate Representative Depositions Revisited*, 65:3 BAYLOR LAW REV. 942, 984 (2013) ("corporate representative depositions were never intended to serve as contention discovery, [because]. . . it is unreasonable to expect any human being in the setting of a deposition to synthesize complex factual and legal positions for a party's opponent"); *see also U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Orl-31TBS, 2012 U.S. Dist. LEXIS 114222, at *12 (M.D. Fla. Aug. 14, 2012) (noting that preparing lay witness to testify about how party intended to marshal facts would be difficult, time-consuming, and "almost certainly result in the disclosure of work product privileged information"); *Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D. 59, 61 (D. Mass. 2011) (30(b)(6) witness "should not be expected to testify as to how . . . facts form the basis of a legal affirmative defense"); *J.P. Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories . . . ."); *U.S. v. Taylor*, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996) (noting that such questions are better answered through contention interrogatories "wherein the client can have the

assistance of the attorney in answering complicated questions involving legal issues"). In this case, the basis for the fraud claim is clearly laid out in the counterclaim, the response to the motion to dismiss, and above. There is more than sufficient evidence that Clarke-Smith committed fraud against BPIH for this claim to proceed to trial.

### G. The Evidence Shows Clarke-Smith Was Actionably Negligent.

Clarke-Smith claims that she cannot be liable for negligence because such a finding would require every employee to perform his or her job "perfectly." Of course, negligence is not the same as a simple error. BPIH has shown not just negligence, but gross negligence on the part of Clarke-Smith.

Plaintiff accurately enumerates the elements of negligence as (1) a legal duty owed; (2) breach of that duty; and (3) injury proximately caused by the breach. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). But the accuracy of Plaintiff's analysis ends there. First, as shown in section B, *supra*, Plaintiff breached the fiduciary duty she owed to BPIH and caused it damage. This alone is sufficient to show negligence.

Only two additional requirements must be established to prove gross negligence: (1) an act or omission that involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) a mental state of actual, subjective awareness of the risk, but the actor proceeds with conscious indifference to the rights, safety, or welfare of others. *Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 921 (Tex. App.--Dallas 2013, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 41.001(11). "In essence, a person commits gross negligence when he knows full well that his conduct poses an extreme risk of harm to others and yet does not care." *Id*. In this case, Plaintiff

failed to make COBRA and other insurance payments on behalf of employees and former employees.   Daniel 2014 Dec. at ¶¶ 5, 15 App. 8,11.   Lack of insurance for which employees had paid created an extreme degree of risk both for those employees and for BPIH, who would have to pay for any accidents or illnesses that happened while such employees were not covered.   *See id.* BPIH has, in fact, been faced with claims for such losses.   As the director of human resources, Plaintiff must have been well aware of the risks of uninsured employees.   Therefore, BPIH has shown a prima facie case of both negligence and gross negligence.

Yet, according to Plaintiff, an employee cannot be held liable for "making a mistake" at work.   While the law does not require perfection, it does require that people act with due care.   Clarke-Smith admits that she had such a duty to her employer. Clarke-Smith Depo. at 24:5-18; App. 141.   And while Clarke-Smith has cited no case holding that an employee has no duty to his or her employer, many cases confirm that employees do, indeed, have a duty of care in their employment relationship.   *See, e.g.*, *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 203 (Tex. 2002) (holding that employees may owe duties to employers); *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510-11 (Tex. App. -- Houston [1st Dist.] 2003, no pet.) (key trucking company employee owed employer a duty); *Herider Farms-El Paso, Inc. v. Criswell*, 519 S.W.2d 473, 477 (Tex. Civ. App. -- El Paso 1975, writ ref'd n.r.e.) (retail poultry and egg outlet manager held a position giving rise to fiduciary duties to his employer); *see also Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 316 (Tex. App. -- Fort Worth 2003, no pet.) ("even apart from any written contract, a fiduciary relationship arises from an employment relationship forbidding an employee from using trade secrets or confidential or

proprietary information in a manner adverse to the employer").

Finally, as demonstrated repeatedly above, BPIH has provable damages for each of its claims against Clarke-Smith.  It had to pay COBRA for those employees who were not properly covered; it had to pay employees and clients for 401k gains that were not realized because the deposits were not made; it is facing claims from clients and employees for failure to properly procure insurance; and it paid over $100,000.00 to extricate itself from an unauthorized contract signed by Plaintiff.

### IV. CONCLUSION AND PRAYER

Defendant has shown that a reasonable fact-finder could rule for it on each of its claims against Plaintiff.   For that reason, summary judgment must be denied so that these claims may be brought to trial and any questions of fact resolved.

WHEREFORE, Defendant requests that Plaintiff's motion for summary judgment be denied and for such other and further relief as this Court may deem just and proper.