**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| NICOLE CLARKE-SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-2732-M |
| | § | |
| BUSINESS PARTNERS IN HEALTHCARE, | § | |
| LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are separate motions for summary judgment filed by Plaintiff Nicole Clarke-Smith and Defendant Business Partners in Healthcare, LLC ("BPIH") in this employment case involving claims under federal and state law. For the reasons set forth below, Clarke-Smith's motion is granted in part and denied in part, and BPIH's motion is granted in its entirety.

## I.     BACKGROUND

BPIH is a management-services company that provides human resources, payroll, and other administrative services for clients in the health care field. Def. MSJ App. [Docket Entry #49] at 1, ¶ 1; Pl. MSJ Resp. App. [Docket Entry #51] at 2, ¶ 4. Clarke-Smith, who is African-American, worked as BPIH's Director of Human Resources from 2012 to February 28, 2014. Def. MSJ App. at 1, ¶ 2; Pl. MSJ Resp. App. at 1, ¶ 2. In this position, Clarke-Smith was responsible for administering employee's health, life, disability and COBRA insurance plans, ensuring compliance with federal and state employment laws, and developing and implementing employment policies and procedures for BPIH and its health care clients. Def. MSJ App. at 1, ¶ 2. BPIH is affiliated, to varying degrees, with several of its clients; some of the companies share

common ownership and/or management with BPIH, and a number of the companies office in the same building as BPIH.  *See, e.g.,* Pl. MSJ Resp. App. at 68-73, 76-80, 94-97, 121-22.

Clarke-Smith alleges that, in December 2013, she received a complaint from a human resources employee at one of BPIH's clients, Champion Medical Center, who stated Champion's CEO had made racist and homophobic comments to the employee, and directed him not to hire African-Americans.  Pl. MSJ Resp. App. at 5, ¶ 12.  According to Clarke-Smith, the Champion employee, who is gay, was particularly upset by the CEO's homophobic comments.  *Id.*  Clarke-Smith empathized with the employee, telling him that she understood his frustration because she had "reached a ceiling" at BPIH because of her race.  *Id.*  In January of 2014, BPIH's CEO, Josh Daniel learned of this conversation and confronted Clarke-Smith about it.  Def. MSJ App. at 2, ¶ 7.  Clarke-Smith acknowledged the conversation and confirmed that she felt she could not advance at BPIH because of her race.  *Id.*; Pl. MSJ Resp. App. at 6, ¶ 14.  She told Daniel that she felt she believed BPIH allowed a "blatant racist" to run Champion.  *Id.*; Pl. MSJ Resp. App. at 6, ¶ 14.

Clarke-Smith alleges that in January 2014, she began to suffer from severe headaches for which she sought medical treatment.  Pl. MSJ App. at 6, ¶ 15.  On February 18, Clarke-Smith had a severe headache at work, told Daniel she needed to see a doctor, and left work.  *Id.*  Clarke-Smith claims that her doctor advised her not to return to work until March 7.  *Id.* at 6, ¶ 15.  On February 19, 2014, she had her husband deliver to BPIH a leave request form, indicating that Clarke-Smith would be off until March 7, 2014.  *Id.* at 10-11.

While Clarke-Smith was on leave, BPIH allegedly learned it was under investigation by the United States Department of Labor ("DOL") for problems with COBRA notices to former employees.  Def. MSJ App. at 3, ¶ 10.  BPIH contends Clarke-Smith knew of the DOL

investigation before she went on leave, but had concealed it from her supervisors.  *Id.*  BPIH also

contends it learned from its 401(k) representative that deposits had not been timely made into its

employees' retirement accounts.  *Id.*  BPIH claims it terminated Clarke-Smith's employment

because of those issues.  *Id*. at 42.

Clarke-Smith received notice of this decision by a letter dated February 28, 2014, and

signed by Daniel, which states that BPIH is terminating her employment, effective immediately,

because:

> Business Partners in Healthcare places the highest priority on
> maintaining an ethical and effective workplace that meets the
> highest standards of integrity.  Because you have demonstrated a
> willingness to compromise these standards, we cannot in good
> faith continue your employment with us. . . .
>
> You are dismissed because it has come to our attention that your
> work performance has been well below that standard required by
> the company.  Specifically, you have failed to perform your job in
> the following areas:
>
> - 401(k) deposits
> - COBRA benefits
>
> Due to your failure and refusal to meet the core requirements of
> your job, the company is now faced with the possibility of having to
> respond to federal and state investigations into its human resources
> practices and policies, for which you were responsible. . . .

*Id.*  The letter further requested Clarke-Smith to appear at BPIH's offices on March 7, 2014 "[i]n

order to effectuate an exchange of belongings."  *Id.*

Clarke-Smith received the termination letter on March 5, 2014, and responded in writing.

Pl. MSJ Resp. App. at 7, ¶ 17; Def. MSJ App. at 44-45.  She denied any work performance

issues, objected to Daniel's characterization of her character, and suggested that it was other

"senior employees in parent companies" who had behaved unethically.  *See* Def. MSJ App. at

44-45.  Clarke-Smith further informed Daniel that she had been terminated while she was "on

FMLA," and challenged BPIH's right to terminate her benefits prior to March 31, 2014, the end of the month for which she believed she had been granted leave.  *Id.* at 45.  She refused to appear at BPIH's offices on March 7, 2014.  *Id.*

One week later, BPIH filed a lawsuit against Clarke-Smith in state court.  *See id.* at 45-55.  The lawsuit sought more than one million dollars in damages for alleged breaches of fiduciary duties, defamation and business disparagement, tortious interference with contracts and prospective business relations, conversion, trespass to chattels, theft of property, violations of the Texas Theft Liability Act ("TTLA"), misappropriation of trade secrets, fraud, negligence, and gross negligence.  *Id.*  Succinctly stated, BPIH alleged that, while Clarke-Smith was on leave, it discovered she had failed to complete essential functions of her job, ignored requests for information from the DOL, and lied to cover up problems with her work performance, all of which exposed BPIH to liability.  *See id.* at 46.  BPIH further alleged that, after her termination, Clarke-Smith refused to return company-owned property and computer equipment containing confidential information and trade secrets.  *Id.* at 46-47.  BPIH attempted to serve the lawsuit on Clarke-Smith, but she was not at home, and her husband, who reviewed the petition, refused to accept service on her behalf.  Pl. MSJ Resp. App. at 7, ¶ 18.  BPIH nonsuited the lawsuit on April 28, 2014.

Clarke-Smith filed a charge of discrimination with the EEOC on May 9, 2014.  *Id.* at 15. In her charge, she states that BPIH discriminated against her because of her race and retaliated against her for opposing discrimination.  *Id.*  BPIH then filed a second lawsuit in state court.  *Id.* at 56-64.  The new lawsuit reasserted claims against Clarke-Smith for more than one million dollars in damages on causes of action identical to the ones raised in the first lawsuit.  *Id.*

Clarke-Smith filed an Anti-SLAPP motion to dismiss in the second state court lawsuit, and BPIH responded by again non-suiting its case.

On July 30, 2014, Clarke-Smith filed this lawsuit in federal court, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, for race discrimination and interference with her FMLA rights, as well as retaliation in violation of Title VII, Section 1981, and the FMLA.  BPIH reasserted the causes of action from its state court lawsuits against Clarke-Smith as counterclaims.  BPIH also added a new claim, for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  In a prior ruling, this Court dismissed BPIH's claims for defamation and business disparagement.  *See* Order dated 1/6/15 [Docket Entry #26].  Clarke-Smith moved for summary judgment on all of BPIH's remaining claims, and BPIH moved for summary judgment on all of Clarke-Smith's claims.  The issues have been fully briefed, and the motions are ripe for determination.

## II.    LEGAL STANDARDS

Summary judgment is warranted when the movant shows that there is no genuine dispute of material fact as reflected in the pleadings, affidavits, and other summary judgment evidence, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012).  The moving party bears the initial burden of demonstrating the absence of evidence supporting the nonmovant's claims. *Babcock v. Hartmarx Corp.*, 182 F.3d 336, 338 (5th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies its initial burden, the burden shifts to the nonmovant to prove that summary judgment is

not appropriate. *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 411 (N.D. Tex. 2009) (Lynn, J.) (citing *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir.1991)).

The nonmovant must go beyond the pleadings and identify specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, all factual disputes will be interpreted in the light most favorable to the nonmovant, provided that both parties have introduced evidence showing that a dispute exists. *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). A district court properly grants summary judgment if, when viewing all facts in the light most favorable to the nonmovant, it determines that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.     BPIH'S SUMMARY JUDGMENT MOTION

The Court first turns to BPIH's motion for summary judgment on Clarke-Smith's claims for race discrimination, retaliation, and violations of the FMLA.

### A.     Clarke-Smith's Claims under Title VII and Section 1981

Clarke-Smith's claims for race discrimination and retaliation under Title VII and Section 1981 are governed by the same evidentiary framework on summary judgment. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Under this framework, Clarke-Smith may prove discrimination or retaliation by either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Direct evidence is evidence which, if believed, would prove the existence of unlawful discrimination or retaliation without any inferences or presumptions. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Once direct evidence of discriminatory or retaliatory intent is proffered, the burden shifts to BPIH to

prove by a preponderance of the evidence that the same decision would have been reached absent the presence of an unlawful factor.  *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001).  If there is no direct evidence, Clarke-Smith must establish a prima facie case of discrimination or retaliation using circumstantial evidence.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  If Clarke-Smith meets this burden, BPIH must articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007).  The burden then shifts back to Clarke-Smith to rebut BPIH's explanation by showing either pretext or mixed motives, including an illegal motive.  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

1.      *Discrimination*

In her summary judgment response, Clarke-Smith concedes that the only adverse employment action at issue on her claim for race discrimination is her termination.  *See* Pl. MSJ Resp. [Docket Entry #50] at 13 ("Clarke-Smith alleges that she was fired due to her race.").  With regard to this act, BPIH does not dispute that Clarke-Smith can meet her initial burden on summary judgment to establish a prima facie case of discrimination.  BPIH contends, however, that it had multiple non-discriminatory reasons for firing Clarke-Smith, including her failure to send COBRA notices, her failure to properly deposit employees' 401(k) contributions, and other "payroll and tax errors."  *See* Def. MSJ App. at 42, 129-30.  BPIH further contends that Clarke-Smith cannot show that its reasons for firing her were pretextual or that race was a motivating reason for its termination decision.

Once an employment discrimination case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question

regarding the alleged discrimination.  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404

(5th Cir. 1999).  Clarke-Smith must identify evidence rebutting each of the nondiscriminatory

reasons BPIH articulated and must show that a discriminatory motive more likely led to its

decision, or that its explanation is unworthy of credence.  *Wallace v. Methodist Hosp. Sys.*, 271

F.3d 212, 220 (5th Cir. 2001).  Here, Clarke-Smith asserts that a fact issue exists with respect to

pretext because the evidence establishes that BPIH has offered inconsistent and shifting reasons

for her termination.  Pl. MSJ Resp. at 13; *see also id.* at 11-12.  She contends that statements

BPIH made in the February 28, 2014 termination letter -- that she was being fired for alleged

poor performance with respect to 401(k) deposits and COBRA benefits -- cannot be reconciled

with later statements that BPIH fired her for payroll and tax errors or because she stole from the

company, breached her fiduciary duties, and misappropriated trade secrets.

Inconsistent reasons for an adverse employment action offered by an employer at

different times can create a fact issue as to pretext.  *See Gee v. Principi*, 289 F.3d 342, 347-48

(5th Cir. 2002).  However, proof that an employer's reasons for terminating an employee become

more detailed when litigation commences is insufficient to create a jury question regarding

pretext absent an actual inconsistency.  *Minnis v. Bd. of Supervisors of La. State Univ. & Agric.*

*& Mech. Coll.*, 2015 WL 3941846, at *5 (5th Cir. June 29, 2015).  Explanations that differ only

in their level of generality are not sufficiently inconsistent to create a fact issue. *Id.*; *see also*

*Hamilton v. AVPM Corp.*, 593 F. App'x 314, 322 (5th Cir. 2014) (per curiam).  In this case, in

fact BPIH's reasons for firing Clarke-Smith are not inconsistent.  BPIH initially told Clarke-

Smith that she was fired because she made errors in administering its clients' 401(k) and

COBRA benefit programs, and BPIH has consistently maintained that Clarke-Smith's alleged

errors in performing her work responsibilities led to her termination.  Daniel further stated during

his deposition that he terminated Clarke-Smith for payroll and tax errors.  Def. MSJ App. at 129-30.  Clarke-Smith's work responsibilities included performing payroll and tax functions, and BPIH's decision to terminate her for alleged errors in those functions is consistent with terminating her for errors in administering other employer benefit programs.

Clarke-Smith attempts to manufacture an inconsistency by pointing to a statement in a footnote in BPIH's summary judgment brief that the company's reasons for filing its state court lawsuits "were the same as the reasons for [Clarke-Smith's] termination."  Pl. MSJ Resp. Br. at 11 (citing Def. MSJ Br. at 14, n. 7).  This approach mischaracterizes BPIH's arguments and ignores the evidence.  The lawsuits allege that Clarke-Smith was terminated because BPIH learned it was being investigated by the DOL for problems with the administration of its COBRA benefits plan.  The suits further allege that Clarke-Smith engaged in other tortious conduct *after* her termination which gave rise to its claims for, among other things, theft, breach of fiduciary duties, and misappropriation of trade secrets.  The evidence shows that BPIH has consistently argued that Clarke-Smith was terminated for work performance issues.  BPIH's discovery, and assertion, of additional alleged performance issues during the course of this litigation does not create an inconsistency that gives rise to a fact issue on pretext.

Clarke-Smith contends that pretext is established by BPIH's failure to follow its normal disciplinary procedures and terminate her without first counseling her regarding her alleged work performance issues.  However, there is no evidence to establish that BPIH had a regular practice for employee discipline arising out of issues with work performance.  Clarke-Smith also contends that evidence that she was subject to disparate treatment raises a fact question as to pretext.  According to Clarke-Smith, BPIH and its clients did not challenge unemployment

claims made by white managers, but BPIH contested her claim.  She further claims BPIH and its clients also offered severance agreements to white employees, but not to her.

When an employer treats employees of one race more favorably than similarly situated employees of another race under circumstances that are essentially identical, a presumption of discriminatory intent arises.  *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985).  Clarke-Smith identifies four white employees who were terminated for misconduct, applied for unemployment benefits that were not challenged, and entered into severance agreements.  *See* Pl. MSJ Resp. App. at 4-5, ¶¶10, 11.  She fails to establish, however, that she was similarly situated to any of these employees or that the circumstances of the alleged disparate treatment were essentially identical.  Indeed, there is nothing to indicate that the identified employees had similar positions or job functions to Clarke-Smith or that the same supervisor or decision makers were involved in the decisions about those employees as were involved in the decisions about Clarke-Smith.  The evidence shows that each of the identified employees worked for one of BPIH's clients, while Clarke-Smith worked for BPIH.

Clarke-Smith has failed to raise a genuine fact issue as to pretext.  BPIH is therefore entitled to summary judgment on her claims for race discrimination under Title VII and Section 1981.

### 2.  *Retaliation*

To establish a prima facie case of retaliation, Clarke-Smith must show:  (1) that she engaged in protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.  *See Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).  BPIH challenges Clarke-Smith's ability to prove the first prong of this test.  Protected activity broadly includes opposition to any practice

rendered unlawful by Title VII.  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  In this case, the summary judgment evidence establishes that Clarke-Smith told Daniel she could not advance at work because of her race.  Pl. MSJ Resp. App. at 6, ¶ 14.  She reported this sentiment to her supervisor, in the context of discussing another person's report that the CEO of a BPIH client made racist comments and gave instructions not to hire African-Americans.  *Id.* She further explained to Daniel that she felt she had "reached a ceiling" because BPIH allowed a racist individual to serve as the CEO of Champion.  *Id.*  BPIH contends that this evidence fails to show Clarke-Smith engaged in protected activity, because Clarke-Smith did not characterize her comments as a "formal complaint."  *See* Def. MSJ Br. at 22-24, citing Def. MSJ App. at 69-70. The Court, however, looks to the substance of Clarke-Smith's activity, rather than her characterization of it.  The evidence shows that Clarke-Smith objected to racist comments and illegal hiring practices by a BPIH client and she informed her supervisor that she felt she could not advance at work if BPIH tolerated that kind of behavior.  The evidence is thus sufficient to raise a fact issue as to whether Clarke-Smith engaged in protected activity for purposes of establishing a prima facie case of retaliation.

However, Clarke-Smith's inability to raise a genuine fact issue as to pretext is fatal to her retaliation claims.  Clarke-Smith argues that pretext can be inferred from BPIH's "dramatically conflicting and ever changing" reasons for her termination "coupled with" evidence that she was fired within a few weeks of her conversation with Daniel.  As set forth above, the Court does not find BPIH's reasons for firing Clarke-Smith to be so inconsistent that they raise a fact issue as to pretext.  And, temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason for an employment action. *Kostic v. Texas A&M University at Commerce*, 11 F. Supp. 699, 732 (N.D. Tex. 2014) (Lynn, J.)

(citing *Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 487 (5th Cir. 2008)).  Therefore, BPIH is entitled to summary judgment on Clarke-Smith's retaliation claims under Title VII and Section 1981.

## B.  Clarke-Smith's FMLA Claims

The FMLA provides that an eligible employee is entitled to take up to twelve weeks of leave during any twelve month period because of a serious health condition that makes the employee unable to perform the functions of his or her position.  29 U.S.C. § 2612(a)(1)(D).  An employer violates the FMLA when it interferes with, restrains, or denies the exercise of, or the attempt to exercise, an employee's rights under the statute.  *Id.* at § 2615(a)(1).  Additionally, the statute prohibits an employer from using the taking of FMLA leave as a negative factor in employment decisions, such as hiring, promoting, or taking disciplinary action.  *Id.* at § 825.220(c); *see also Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).  In this case, Clarke-Smith contends that BPIH violated the FMLA by terminating her employment while she was on leave for a serious health condition.

BPIH disputes that it is a covered employer subject to liability under the statute.  The FMLA applies to employers with fifty or more employees during each of twenty or more calendar workweeks in the calendar year, or the year preceding the calendar year, in which the alleged violation occurred.  29 U.S.C. at § 2611(4)(A)(i).  BPIH has submitted uncontroverted evidence that it had fifty or more employees for only twelve weeks in 2014, and it did not have fifty or more employees at any time in 2013.  *See* Def. MSJ App. at 46, ¶ 2; *see also id.* at 49-51.

Notwithstanding this evidence, Clarke-Smith contends that BPIH is subject to the FMLA because the company and its corporate clients constitute a single employer for purposes of satisfying the statute's coverage requirements.  The federal regulations implementing the FMLA

provide that "[n]ormally the legal entity which employs the employee is the employer under the FMLA."  29 C.F.R. § 825.104(c).  However, separate entities may be deemed to be parts of a single employer for purposes of the FMLA if they meet the "integrated employer" test.  *Id.* at § 825.104(c)(2).  Where this test is satisfied, the employees of all the entities making up the integrated employer are counted in determining employer coverage.  *Id.*  The integrated employer test examines four factors to determine whether multiple entities should be considered as a single employer:  (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control.  *Id.* No single factor is dispositive, and the entire relationship among the separate entities should be viewed in its totality.  *Id.*

Clarke-Smith does not specifically identify which of BPIH's many clients she contends are integrated with BPIH.  She merely provides a list of BPIH clients and selectively identifies various aspects of different relationships in an attempt to aggregate the employees for BPIH and all of its client companies. *See* Pl. MSJ Resp. App. at 2-4, ¶¶ 5-7; *see also id.* at 94-97.  For example, Clarke-Smith contends that BPIH and some client entities have common managers, while BPIH, or its owners, share an ownership interest in other client entities. *See, e.g.,* Pl. MSJ Resp. at 16.  Mike Austin, a limited liability company Manager for BPIH, served as Chair of the BPIH Board and had "formal management roles" in BPIH clients Total Surgical Management and L2 Surgical.  *Id.*  Austin also was part owner of BPIH, as well as BPIH clients Medicus Labs, United Toxicology, Infinity Toxicology, Horizon Testing, and Sunrise Toxicology.  *Id.* This "pick-and-choose" approach is inconsistent with proper application of the integrated employer test, which contemplates examining the four factors in the context of the relationship between the same entities.

Even when the test is properly applied, however, the evidence fails to raise a genuine fact issue as to whether BPIH and its clients constitute a single employer for purposes of establishing that the FMLA's fifty employee minimum requirement for employer coverage is satisfied. Clarke-Smith points to search results from the office of the Texas Secretary of State which list BPIH managers as also having management titles with BPIH clients. *See* Pl. MSJ Resp. App. at 68-73 & 76-80.  However, there is no evidence before the Court regarding the extent of any BPIH manager's involvement with a BPIH client. Clarke-Smith also points to deposition testimony that some, but not all, of the owners of BPIH had an ownership interest in a few of BPIH's clients. *Id.* at 121-22.  Again, however, there is no evidence showing the nature of the BPIH owners' interest in, or the degree of financial control over, the BPIH client.  Nor is there evidence of any degree of functional integration, or interrelation of operations, between BPIH and any of its clients.  That BPIH and several of its clients had their offices in the same building does nothing to establish integration.  Similarly, evidence that shows BPIH performed accounting, payroll, human resources, and other administrative services for its clients is inapposite, given that BPIH is a management services company that exists to perform such "back office" services for its clients.

Clarke-Smith argues, in the alternative, that BPIH and its clients should be treated as "joint employers" whose employees are counted together for purposes of determining FMLA coverage.  The joint employer test applies where two or more businesses exercise some control over the work or working conditions of the employee.  29 C.F.R. § 825.106(a).  Some common situations where such a relationship is found to exist include: (1) where there is an arrangement between employers to share an employee's services or to interchange employees; (2) where one employer acts directly or indirectly in the interest of the other employer in relation to the

employee; and, (3) where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with, the other employer.  *Id.*  Clarke-Smith relies on the same evidence to establish that BPIH and its clients are joint employers as she did to attempt to satisfy the integrated employer test.  However, none of that evidence establishes that BPIH and one or more of its clients exercised shared control over any employee's work or working conditions.  Clarke-Smith's conclusory assertions that BPIH and its clients were affiliated or connected do nothing to demonstrate that BPIH or any of its clients control, is controlled by, or is under common control with another company.

Clarke-Smith has thus failed to raise a genuine fact question as to the threshold determination of whether BPIH is a covered employer under the FMLA.  Accordingly, BPIH is entitled to summary judgment on all of Clarke-Smith's FMLA claims.

## IV. CLARKE-SMITH'S SUMMARY JUDGMENT MOTION

The Court next considers BPIH's counterclaims for violations of the CFAA, breach of fiduciary duty, tortious interference with contracts and prospective business relations, conversion and violations of the TTLA, misappropriation of trade secrets, fraud, negligence, and gross negligence, and Clarke-Smith's motion for summary judgment as to all of those claims.

A.  BPIH's Claims Arising out of Clarke-Smith's Alleged Theft of BPIH Devices

BPIH contends that Clarke-Smith took a company laptop and a thumb drive, both of which allegedly contained its confidential information, from its offices prior to her departure on leave, and failed to return those items following her termination.  Based on this alleged conduct, BPIH asserts claims for conversion and violations of the TTLA, misappropriation of trade secrets, violations of the CFAA, and breach of fiduciary duty.  Clarke-Smith denies that she took

15

a BPIH laptop or thumb drive.  She argues that BPIH's claims relating to these devices fail because BPIH has no competent summary judgment evidence that (1) she took a laptop or a thumb drive; (2) BPIH demanded the return of any computer device or equipment; (3) the laptop and thumb drive contained confidential information; or (4) she accessed a BPIH laptop computer after her termination.

### 1.  Conversion and Violations of the TTLA

Under Texas law, a person who wrongfully exercises dominion and control over another person's property in denial of, or inconsistently with, the owner's rights is liable for conversion. *See Green Int'l Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997).  To prevail on its conversion claim, BPIH must prove:  (1) BPIH owned, had legal possession of, or was entitled to possession of the laptop and thumb drive; (2) Clarke-Smith unlawfully and without authorization assumed and exercised dominion and control over the devices to the exclusion of, or inconsistently with, BPIH's rights as an owner; (3) BPIH demanded that Clarke-Smith return the devices; and (4) Clarke-Smith refused to return the devices.  *See Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App. – Dallas 2012, no pet.).  BPIH must also prove it was injured by the conversion.  *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997).  Additionally, the TTLA provides that a person who commits theft is liable for damages resulting from the theft.  Tex. Civ. Prac. & Rem. Code §§ 134.003(a).  Theft means unlawfully appropriating property, including trade secrets, as described in the Texas Penal Code. *Id.*, § 134.002 (2).  To prevail on its claims under the TTLA, BPIH must establish: (1) BPIH had a possessory right to the laptop and thumb drive at issue; (2) Clarke-Smith unlawfully appropriated those devices in violation of the Penal Code; and (3) BPIH sustained damages as a result of the theft.  *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 523, 542 (S.D. Tex. 2011).

In this case, BPIH's claims for conversion and violations of the TTLA fail because there is no genuine fact issue as to whether Clarke-Smith wrongfully exercised dominion and control over or unlawfully appropriated a laptop computer or a thumb drive belonging to BPIH. Regarding the laptop, BPIH plainly admits that it cannot identify any computer that was issued to Clarke-Smith and not returned because it did not track its equipment by serial number.  Def. MSJ Resp. App. [Docket Entry #53-1] at 158, ¶ 3; *see also* Pl. MSJ App. [Docket Entry #47] at 22. The only evidence BPIH points to in support of its claims for conversion and theft are general statements by BPIH employees that Clarke-Smith "had two laptop computers that she used for work" and that, after she went on leave, only one computer was found in her office.  Pl. MSJ App. at 23; Def MSJ Resp. App. at 3, ¶¶ 2, 4; *id.* at 77-78, ¶¶3-4.  From those statements, BPIH asks the Court to infer that Clarke-Smith took the other computer when she went on leave.

Some of the statements on which BPIH relies are not competent summary judgment evidence.  For example, Christopher Torrez, BPIH's Chief Information Officer, who provided a declaration in support of BPIH's summary judgment response, stated that "[i]t was *common knowledge* at the company that Clarke-Smith had two laptop computers she used for work," and that "[a]fter Clarke-Smith's employment ended, one of those computers was returned to the IT department[.]" Def. MSJ Resp. App. at 158, ¶¶ 3-4 (emphasis added).  This statement is not competent summary judgment evidence, because it is not based on personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  Torrez disclaims any possibility of personal knowledge by conceding that he did not work for BPIH at the time the computers were allegedly assigned to Clarke-Smith.  Def. MSJ Resp. App. at 158, ¶ 3.  Similar

statements by other BPIH employees that Clarke-Smith had two laptop computers in her office prior to her departure on leave, (*see, e.g.,* Def. MSJ Resp. App. at 3, ¶ 2 and 77, ¶ 3), are conclusory and fail to raise a genuine fact issue as to whether Clarke-Smith took a computer from BPIH, especially in light of BPIH's admission that it kept no inventory of its equipment.

The only evidence identified by BPIH that Clarke-Smith kept a thumb drive belonging to the company after her termination is (1) Clark-Smith's statement in response to the February 28, 2014 termination letter that she kept copies of COBRA forms on a "thumbnail" that she "may have . . . or it's located in the top left desk draw [sic]," Def. MSJ Resp. App. at 50, and (2) testimony by BPIH employees that they searched Clarke-Smith's office and never found the thumb drive, Def. MSJ Resp. App. at 3-4, ¶ 4 and 77-78, ¶ 4.  Even if this evidence were sufficient to raise a fact issue, BPIH's conversion claim fails because there is no evidence that BPIH demanded that Clarke-Smith return the thumb drive to it after her termination.  *Buffet Partners, L.P. v. Sheffield Square, L.L.C.*, 256 S.W.3d 920, 924 (Tex. App. – Dallas 2008, no pet.) (stating that demand for return of property is required to prevail on claim for conversion); *French v. Moore*, 169 S.W.3d 1, 14 (Tex. App. – Houston [1st Dist.] 2004, no pet.) (same).  The notice of dismissal requests that Clarke-Smith come to the company's office on March 7, 2104 "[i]n order to effectuate an exchange of belongings," Def. MSJ Resp. App [Docket Entry 53] at 48 (emphasis added), but it fails to identify any specific property in Clarke-Smith's possession or make an unequivocal demand for the return of such property.  *See Earthman's Inc. v. Earthman*, 526 S.W.2d 192, 203 (Tex. App. – Houston [1st Dist.] 1975, no writ) (recognizing that demand for return of property must be unequivocal in order to support claim for conversion). Accordingly, the notice of dismissal does not constitute a legally sufficient demand.  Nor do BPIH's allegations in this lawsuit or its counsel's conversations with Clarke-Smith's attorney

constitute a sufficient demand on Clarke-Smith for the return of a thumb drive.  There is also no

evidence that BPIH demanded that Clarke-Smith return a laptop computer.  Clarke-Smith is

therefore entitled to summary judgment on BPIH's claims for conversion and violations of the

TTLA.

To the extent BPIH bases its claim for breach of fiduciary duty on Clarke-Smith's alleged

theft of a company-owned computer device or other equipment, Clarke-Smith is entitled to

summary judgment on that claim, because the evidence is insufficient to raise a genuine fact

issue as to whether Clarke-Smith actually took any such a device or equipment.

### 2.       *Misappropriation of Trade Secrets*

To succeed on its claim for misappropriation of trade secrets, BPIH must show that (1) a

trade secret exists; (2) Clarke-Smith acquired the trade secret by breach of a confidential

relationship or other improper means; (3) Clarke-Smith used the trade secret without

authorization; and (4) BPIH suffered damages as a result.  *Twister B.V. v. Newton Research*

*Partners, LP*, 364 S.W.3d 428, 437 (Tex. App. – Dallas 2012, no pet.).  A trade secret is any

formula, pattern, device, or compilation of information that is used in a company's business and

presents an opportunity to obtain an advantage over competitors who do not know or use it.  *In*

*re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).  To determine whether a piece of information is

protected as a trade secret, courts consider the following nonexclusive criteria: (1) the extent to

which the information is known outside the business; (2) the extent to which it is known by

employees and others involved in the business; (3) the extent of measures taken to safeguard the

secrecy of the information; (4) the value of the information to the owner and to its competitors;

(5) the amount of effort or money expended in developing the information; and (6) the ease or

difficulty with which the information could be properly acquired or duplicated by others.  *Gen.*

*Universal Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004).  Examples of information that has

attained trade secret status include customer lists, pricing information, client information,

customer preferences, buyer contacts, blueprints, market strategies, and drawings.  *Reliant Hosp.*

*Partners, LLC v. Cornerstone Healthcare Grp. Holdings, Inc.*, 374 S.W.3d 488, 499 (Tex. App.

– Dallas, 2012, pet. denied).  "'Use' of a trade secret means commercial use, by which a person

seeks to profit from the use of the secret."  *Trilogy Software, Inc. v. Callidus Software, Inc*., 143

S.W.3d 452, 464 (Tex. App. – Austin 2004, pet. denied) (citing *Atlantic Richfield Co. v. Misty*

*Prods., Inc*., 820 S.W.2d 414, 421 (Tex. App. – Houston [14th Dist.] 1991, writ denied)).

Here, BPIH fails to raise a genuine fact issue on any of the essential elements of its claim

for trade secret misappropriation.  BPIH fails to sufficiently identify a trade secret acquired by

Clarke-Smith or show that she actually used any of its trade secrets.  BPIH's contends that the

laptop and the thumb drive Clarke-Smith allegedly stole contained information that the company

treated as trade secrets.  However, it fails to identify the alleged trade secret information with any

specificity or explain how it treated that information as a trade secret.  In fact, BPIH admits that

it does not know what information was on the devices.  Pl. MSJ App. at 44-45; Def. MSJ App. at

96.  Nor does the evidence raise a fact issue as to whether Clarke-Smith acquired trade secret

information by improper means.  As discussed above, the evidence is insufficient to raise a fact

issue on whether Clarke-Smith wrongfully exercised dominion and control over or unlawfully

appropriated any BPIH computer device – much less any alleged trade secret that might have

been stored on the device.  BPIH further fails to identify any evidence that indicates that Clarke-

Smith made commercial use of any alleged trade secret information or that it suffered damages

as a result.  It concedes that it "has no idea" what Clarke-Smith may or may not have done with

any information on any device. Pl. MSJ App. at 44.  It similarly admits that it "has no way to

know" if it has been damaged. *Id.* In the absence of sufficient evidence to raise a fact issue on these elements, Clarke-Smith is entitled to summary judgment on BPIH's claims for misappropriation of trade secrets.

### 3.   *CFAA*

The CFAA is a criminal statute that prohibits unauthorized access to protected computers and other fraudulent activities in connection with the use, or misuse, of computers. *See Southwest Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761 at *11 (N.D. Tex. Sep. 12, 2007) (citing *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006) and *P.C. Yonkers, Inc. v. Celebrations The Party and Seasonal Superstore, LLC,* 428 F.3d 504, 510 (3d Cir. 2005). The statute provides a civil remedy to those who suffer damages as a result of a violation. *See* 18 U.S.C. § 1030(g). In this case, BPIH contends that Clarke-Smith is liable under the CFAA because (1) she intentionally accessed a protected computer without authorization and obtained information from that computer, in violation of 18 U.S.C. § 1030(a)(2)(C); and (2) she intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage and loss, in violation of 18 U.S.C. § 1030(a)(5)(C). Def. MSJ Resp. [Docket Entry #52] at 6-9.

BPIH's claim for violation of the CFAA fails because there is no evidence that Clarke-Smith accessed a protected computer without authorization. Indeed, BPIH admits that it has no evidence that Clark-Smith used the laptop or any files on the computer after she was fired. Pl. MSJ App. at 27. BPIH asserts that Clarke-Smith's alleged continued possession of the laptop "in and of itself" constitutes unauthorized access, *see* Def. MSJ Resp. at 8, but this assertion is not supported by the law. While the CFAA does not define "access," courts interpreting the statute have concluded that "*[u]se of the computer is integral to the perpetration of a fraud under the*

CFAA, and not merely incidental." *Dresser-Rand Co. v. Jones,* 957 F. Supp. 2d 610, 614-15

(E.D. Pa. 2013) (emphasis added); *see also BoardFirst,* 2007 WL 4823761 at *12-13

(interpreting access for purposes of CFAA liability to require successful interaction with

computer).  Further, even if BPIH's contention is correct, that access can be established by

possession alone, the evidence is insufficient to raise a fact question that Clarke-Smith retained a

company laptop after her termination.  Accordingly, Clarke-Smith is entitled to summary

judgment on BPIH's claims for violations of the CFAA.

> B.      Claims Arising out of Clarke-Smith's Performance of Her Job Duties

BPIH contends that Clarke-Smith failed to perform essential functions of her job and

engaged in unethical behavior.  More particularly, BPIH asserts that Clarke-Smith failed to send

out required COBRA notices, make required 401(k) deposits, set up state tax withholding for its

clients, or procure disability or health insurance for its clients.  BPIH further asserts that, after it

terminated Clarke-Smith, it learned she lied to the DOL and BPIH about sending COBRA

notices, entered into an unauthorized contract, instructed unqualified applicants to lie on their

employment applications, and directly competed with BPIH by acting as president and CEO of a

company providing the same types of services as BPIH.  BPIH thus brings claims for (1) breach

of fiduciary duty, (2) tortious interference with contracts, (3) fraud, and (4) negligence.  Clarke-

Smith denies BPIH's assertions and argues that she is entitled to summary judgment on the first

three of these claims because BPIH has no proof that she breached any fiduciary duty,

intentionally interfered with any contract, made any material misrepresentation, nor that BPIH

relied on any such misrepresentation.  Clarke-Smith also argues that BPIH's tortious interference

claim fails because, as an agent of BPIH, she cannot, as a matter of law, interfere with a BPIH

contract.  Finally, Clarke-Smith argues that BPIH's negligence claim fails because the law imposes no such duty on an employee to perform her job in a workmanlike manner.

### 1.     *Breach of Fiduciary Duty*

The elements of BPIH's breach of fiduciary duty claim against Clarke-Smith are: (1) the existence of a fiduciary relationship between BPIH and Clarke-Smith; (2) breach of the fiduciary duty by Clarke-Smith; and (3) injury to BPIH or benefit to Clarke-Smith resulting from the breach.  *See Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App. – Dallas 2012, no pet.).  Under Texas law, a formal fiduciary relationship exists between a principal and its agent.  *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  Also, an employee may owe fiduciary duties to her employer when the employee has been placed in a position of particular confidence or trust toward the employer.  *Tranman, Inc. v. Griffin*, 2013 WL 944502, at *7 (N.D. Tex. Mar. 12, 2013) (Lynn, J).  When a fiduciary relationship exists, the employee has a duty to act primarily for the benefit of the employer, not to compete against the employer in matters connected with her employment, and to deal fairly with the employer in all transactions between them.  *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 509 (Tex. App. – Houston [14th Dist.] 2003, no pet.).  Additionally, an employee has a duty to deal openly with the employer and to fully disclose to the employer information about matters affecting the company's business.  *Id*.

Here, Clarke-Smith concedes she was BPIH's agent.  *See* Pl. MSJ Br. [Docket Entry #45] at 9.  Thus, a fiduciary relationship existed.  BPIH has adduced evidence that Clarke-Smith did not disclose the DOL investigation to BPIH.  Def. MSJ Resp. App. [Docket Entry #53] at 9, ¶ 10.  The declaration provided by BPIH CEO Daniel states that he was not aware that the DOL was seeking information about COBRA notices until February 24, 2014 "despite the fact that the DOL agent had been in contact with [Clarke-Smith] for at least a month."  *Id*.  Clarke-Smith

does not contend she disclosed information about the DOL's inquiries to anyone at BPIH.  In fact, her affidavit makes clear that she tried to handle the matter herself and went on leave without ever mentioning the matter to anyone else.  *See* Pl. MSJ App. at 3-4, ¶ 8.  BPIH also has adduced evidence that Clarke-Smith's failure to fully disclose information about the DOL inquires resulted in damage to BPIH.  Specifically, BPIH incurred attorneys' fees because it engaged counsel to assist with the DOL investigation.  *See* Def. MSJ Resp. App. at 10, ¶ 11 & 98.  Plaintiff does not dispute any of this evidence.  Therefore, a genuine fact issue exists with respect to the disputed elements of BPIH's claim for breach of fiduciary duty, and Clarke-Smith's motion for summary judgment on this claim is denied.

Contrary to Clarke-Smith's assertions, BPIH has not "flip-flopped" on what it contends she did to breach her fiduciary duties, and BPIH's allegation that she failed to disclose the DOL investigation is not new.  *See* Pl. MSJ Reply [Docket Entry #54] at 3.  BPIH has maintained throughout the course of this dispute that Clarke-Smith failed to inform anyone at BPIH about the DOL investigation.  *See, e.g.,* Def. First Am. Answer and Counterclaim [Docket Entry #13] at 10, ¶¶ 56-57.

## 2.    *Negligence*

To prevail on its negligence claim, BPIH must show (1) Clarke-Smith owed it a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach.  *Simms v. Jones*, 879 F. Supp. 2d 595, 603 (N.D. Tex. 2012) (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).  Clarke-Smith contends that BPIH's negligence claim fails because it cannot establish that she owed her employer a legal duty, separate and distinct from the fiduciary duty imposed on her as the company's agent.  BPIH does not attempt to identify a separate legal duty to support its negligence claim and instead rests on its assertion that Clarke-Smith's alleged

breach of her fiduciary duty "alone is sufficient to show negligence." Def. Resp. Br. at 23. This assertion improperly conflates two discrete causes of action. Because BPIH has failed to identify a separate legal duty owed by Clarke-Smith to BPIH, its negligence and gross negligence claims are duplicative of its claim for breach of fiduciary duty and will be dismissed.

### 3. *Tortious Interference with Existing and Prospective Contracts*

BPIH contends that Clarke-Smith is liable for tortious interference with existing contracts because two of its clients terminated their relationships with BPIH after experiencing problems with Clarke-Smith and the HR department. To recover on its claim, BPIH must demonstrate: (1) the existence of a contract, (2) willful and intentional interference with the contract, (3) actual damage or loss, and (4) proximate causation. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998). Because Clarke-Smith was the company's agent, in order to establish willful and intentional interference, BPIH also must show that she acted solely in her own interests. *Id.* In other words, Clarke-Smith must have acted in a manner so contrary to BPIH's interests that her actions could only have been motivated by personal interests. *See Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995). Clarke-Smith also moves for summary judgment on BPIH's tortious interference claim on the ground that there is no evidence that she intentionally interfered with BPIH's client contracts.

BPIH argues that Clarke-Smith's intent can be inferred from the fact that she was the President of Total Rewards Partners, a company BPIH contends competes with it in providing administrative and human resources support to health care clients. Def. MSJ Resp. at 15. According to BPIH, the only explanation for Clarke-Smith's repeated failures to send correct payroll and timesheet information to its clients is that she intended to cause clients to terminate their relationships with BPIH so she could bid on the business for Total Reward Partners. There

is no evidence in the record, however, that Clarke-Smith actually contacted any of BPIH's former clients after her termination.  Indeed, there is no evidence that Total Reward Partners directly competed with BPIH with respect to any business opportunity.  Without such evidence, the mere fact that Clarke-Smith was President of Total Rewards Partners is insufficient to raise a fact question as to whether she acted solely in her own interests and intentionally interfered with BPIH's contracts.

BPIH also claims that Clarke-Smith tortiously interfered with BPIH's prospective contracts because the conduct that allegedly caused two clients to terminate their relationships with BPIH also caused those businesses to refuse or decline to provide referrals for BPIH to prospective clients.  Def. MSJ Resp. at 15-16.  To prevail on a claim for tortious interference with prospective contracts, BPIH must show:  (1) there was a reasonable probability that it would have entered into a contractual relationship; (2) Clarke-Smith committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) Clarke-Smith committed such an act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of her conduct; and (4) BPIH suffered actual harm or damage as a result of Clarke-Smith's interference.  *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 381-82 (Tex. App. -- Houston [1st Dist.] 2005, no pet.).  Clarke-Smith moves for summary judgment on the grounds that there is no evidence to support any of the essential elements of this claim.

BPIH fails to address Clarke-Smith's argument that the record is devoid of evidence that Clarke-Smith committed an independent tort or unlawful act that prevented BPIH from entering into contracts with any prospective clients.  Nor does it attempt to point to any evidence that Clarke-Smith acted with a conscious desire to prevent it from forming a relationship with any

prospective client.  The evidence also fails to support BPIH's assertion that there was a reasonable probability that it would have entered into a contract with any such prospective clients.  The only evidence BPIH identifies is Daniel's testimony that he had "communications" with one of the doctors in an OB/GYN group.  Def. MSJ Resp. App. at 127.  However, the "communications" were "[j]ust a couple of tentative conversations" "[a]bout BPIH in general." *Id.*  Evidence of vague and preliminary communications is insufficient to raise a fact question as to whether there was a reasonable probability that BPIH would have entered into a contractual relationship with that prospective client's group.  Because BPIH has failed to identify evidence sufficient to raise a fact question as to several essential elements of its tortious interference with prospective business relationships claim, Clarke-Smith is entitled to summary judgment.

### 4.     *Fraud*

In its Counterclaim, BPIH alleges that Clarke-Smith is liable for fraud because she represented she had resolved outstanding issues with its clients related to her responsiveness, sent COBRA notices to former employees, and deposited 401k contributions in a timely manner when she had done none of those things.  Def. First Am. Counterclaim at 10, ¶¶ 56-57 & 18, ¶ 103.  BPIH further alleges that Clarke-Smith fraudulently represented to the DOL that she had properly processed COBRA notices when she had not.  *Id.*  BPIH also argues, in its response to Clarke-Smith's summary judgment motion, that Clarke-Smith committed fraud by failing to tell it that the DOL was investigating BPIH for COBRA violations and by instructing potential employees to lie on their job applications.  Pl. MSJ Resp. at 21.  BPIH argues that it relied on Clarke-Smith's statements by continuing to employ her.  *Id.* [1]  Clarke-Smith contends BPIH's

---

[1]     In her summary judgment motion, Clarke-Smith discusses deposition testimony provided by BPIH's corporate representative that the company's fraud claim arises out of the following additional statements allegedly made by Clarke-Smith:

fraud claim fails because the evidence is insufficient to establish that any of the identified statements were material or knowingly false. She also contends that BPIH has no evidence of reliance or damages.

The elements of fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). In this case, none of the evidence adduced by BPIH shows that Clarke-Smith made a material representation. To the contrary, Daniels's declaration states only that "[he] was informed" that Clarke-Smith had addressed problems with COBRA benefits. Def. MSJ App. at 2, ¶ 5. His deposition testimony only describes statements by Daniels, not Clarke-Smith. *Id.* at 57.

BPIH also fails to point to any evidence that suggests it relied on any alleged false statement by Clarke-Smith. The evidence cited in its brief does not address the issue of reliance.

---

- She told two co-workers she had "a ceiling over her head as a black woman;"
- She told HR employees that they would be terminated because BPIH had decided to outsource the human resources function;
- She told BPIH's director of billing that the problem with his department was that it had "too many black women in it;" and
- She told the DOL that she sent a COBRA notice to former employee, Delicia Johnson.

Pl. MSJ Resp. App. at 47-54. However, BPIH disclaims these statements as providing a basis for its fraud claim. Pl. MSJ Resp. at 22-23. It maintains that the basis for its fraud claim is limited to the allegations set forth in its counterclaim, arguments made in response to Clarke-Smith's earlier-filed motion to dismiss, and the arguments and evidence provided in support of its response to the summary judgment motion. *Id.* at 23. The Court therefore does not consider the additional alleged statements identified by BPIH's corporate representative during his deposition in analyzing BPIH's fraud claim.

Def. MSJ Br. at 21.  To the extent BPIH's fraud claim is based on representations to parties other than BPIH, such as the DOL or prospective employees, there is no evidence that BPIH justifiably relied on any representation to a third party.  Nor is there evidence that Clarke-Smith made any representation to a third party with the intent that BPIH act on the representation. Finally, to the extent BPIH contends that Clarke-Smith committed "fraud by nondisclosure" in failing tell BPIH about the DOL investigation, *see* Def. MSJ Br. at 21, BPIH is still required to prove reliance.  *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. -- Dallas 2013, pet. denied) (fraud by nondisclosure is a subcategory of fraud, and reliance is a necessary element of fraud by nondisclosure).  BPIH has failed to raise a fact issue as to reliance.  For these reasons, Clarke-Smith is entitled to summary judgment on BPIH's fraud claim.

## V.     CONCLUSION

Clarke-Smith's motion for summary judgment [Docket Entry #42] is GRANTED in part and DENIED in part.  The motion is granted with respect to BPIH's claims for conversion, violations of the Texas Theft Liability Act, misappropriation of trade secrets, violations of the Computer Fraud and Abuse Act, tortious interference with contracts, fraud, and negligence. These claims are dismissed with prejudice.  Clarke-Smith's motion for summary judgment is denied with respect to BPIH's claim for breach of fiduciary duty.

BPIH's motion for summary judgment [Docket Entry # 46] is GRANTED.  Clarke-Smith's claims for race discrimination and retaliation under Title VII and Section 1981, as well as her claims under the FMLA, are dismissed with prejudice.

The Court will set for trial by separate order BPIH's sole remaining claim for breach of fiduciary duty.

**SO ORDERED**.

January 22, 2016.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS